is number one eight two zero one five Damaris Castigliano versus Stephen v. Walker et al. Thank you. Thanks. Good morning. Good morning and may it please the court my name is Jin Ho King and with me Ilias Rona. We represent Damaris Castigliano. May we reserve two minutes for rebuttal? Yes. Thank you. Now this case presents a crossroads for this circuit's qualified immunity jurisprudence. In one decision this court can essentially cut off officers from liability for almost any kind of wrong committed against innocent subjects or on the other hand this court can allow cases like this to go to a jury for fact finding. We ask that the court send this case back for fact finding for two reasons. First because the district court improperly dismissed the claims against Alden and also because the district court improperly granted summary judgments in favor of Walker. So I'll address the Alden claim first. The claim against Alden is one for failure to train. Let me ask you a question about that. Absolutely. Assuming, I know this is an assumption you don't wish to entertain but assuming we affirm the judgment in favor of Walker doesn't that automatically dispose of the claim against Alden? Yes I believe that it does. Okay. Under our decision in Evans and Avery? Yes and because there needs to be an underlying violation. Right. That's right. Okay. And so I think that's not clear from the briefing that the parties recognize that. I just wanted to get that on the record. Understood and your Honor is also right that we hope that that is not the outcome of this case. Sure I understand. Someone brighter than me once said that hope springs eternal. I don't know how my colleagues want you to proceed but in light of that it might be useful to address the Walker issue. Certainly and I'd be happy to. So I think with the Walker issue I want to talk a bit about the factual dispute first. And I think that because we're talking about summary judgments that if there is a genuine dispute of material fact it cannot be disposed of at summary judgments. And here I think there are two sets of facts in particular that were improperly found to be undisputed or immaterial. First is whether Justiniano was armed. The claim is essentially that he had a pen in his hand before he was shot. The witnesses, Walker certainly testified that he did have a pen in his hand but many of the other witnesses testified that they did not see a pen. I think that is sufficient to create a argument that he was armed. And I think that that fact is important enough for the court's consideration. You know a witness who says I don't know or I didn't see, that's not quite the same thing as saying he didn't. So does that create a genuine issue of material fact? If a witness testifies solely that they did not see, that I agree would not be sufficient. So what is there here more than I did not see? I think it's not just that I didn't see whether he had something in his hand, it is I did not see something in his hand. There's a distinction there. Why is there a distinction? I mean I didn't see something in his hand. That to me isn't the same thing as saying I saw that he had nothing in his hand. Unless there's some basis for believing that's what the witness meant. Well one of the witnesses testified that they saw Justiniano with open palms. Okay. Right. That would be consistent. At the material time, at the same time. That's right. Okay. That's right. And there was another witness I believe who said that they saw him put something down before the police arrived. That's also correct. So these kinds of statements suggest that witnesses were capable of seeing whether he had something in his hand and the testimony that goes in either direction really should go to the jury to decide. The simple fact of that issue being in dispute is we posit sufficient to put this in front of a jury because whether he's armed is such an important question that touches upon every legal issue that we would need to discuss. Well suppose we assume that he wasn't armed but that he was still advancing on the police officer. Okay. So assuming that he was advancing towards the police officer. So here the testimony is also I'll describe it as muddled. I think Walker described it as he was inching towards him. There was a couple minutes between when Walker first engages with Justiniano and when Walker first uses pepper spray. So this is like McKinney where there's a period of time between the interaction when there does not appear to be necessarily a threat. The decedent is walking around when suddenly force is used. Well when you say walking around it's different than advancing. That I agree but the issue is I take it if we say there's a genuine dispute of fact as to whether he was armed and we say there was a genuine dispute of fact as to whether he said I'm going to harm the officer. Both of which I understand do basis for saying that. You still have you don't seem to be disputing whether there was a dispute of fact as to whether he was advancing towards the officer. Right. Okay. So then the question is given the context in which the advancing is occurring which also seems to be undisputed it's a highway. He is clearly disturbed. He hasn't been following directions. Is it clearly established under our precedent that in those settings the use of pepper spray would be impermissible. Yes I believe so. What would be your best authority to So I think that it is all of the authority that goes to whether someone who is unarmed who has committed no crime who poses no threat. The last part is just the key thing. If he's advancing is disturbed is in a setting that is itself somewhat dangerous since it's a highway and is advancing towards the officer. Why is it clearly established that he doesn't pose a threat such that some use of force would be permissible. I think that's not exactly what the undisputed facts are concerning whether or not he was advancing I think is a loaded term. He was certainly walking toward Walker. Well there was one witness who described it as rushing. Yes and the timing on all those statements is is muddled. Walker testifies that there was a period of time where it was 14 feet 14 feet apart and when he used the pepper spray there was still 14 feet apart. So if there were if there was rushing that's consistent with what Walker was testifying to it must have been after the use of the pepper spray. So again I think advancing is more loaded than it need be. If we describe it it would simply be that he was inching toward as Walker was describing in testimony. So with that in mind I think that it's it's too much to say that he was threatening. I think that is a question of fact whether he actually was posing some kind of threat to Walker. It the the record suggests that he wasn't posing a threat to so many anyone else. The testimony from was that she could interact with him and then she walked away. There wasn't a threat that he posed to her necessarily. And again so that issue I see I understand your points but I think that was just the thing that's difficult is you have the clearly established standard and then you have these factual and I just I'm not quite sure how to think through the question of whether if it's such that you say the jury should decide it it could be clear that he was a threat such that the clearly established test would be met. I understood I understand and that's actually why we need this to go to a jury so that a jury can find for example whether or not he did pose a threat. In those settings couldn't he reasonably have thought he wasn't a threat. I mean you know he was a threat even if a jury concluded otherwise. So then that's the whole clearly established test. The jury can also disbelieve that he thought reasonably otherwise that he was. But isn't it an objective standard whether there's an objective basis for this reasonable belief. Isn't that really what we have to look at. That is absolutely what we have to look at and that is consistent. And if from an objective standpoint a reasonable officer would believe that he was a threat or even could have believed that he was a threat. That seems to me that that meets the qualified immunity standard. I again I disagree about whether he could see this as a threat reasonably. You're disagreeing with the conclusion. You're not disagreeing with what the standard is. All right. But it seems to me that considering the proximity considering the forward motion considering the dialogue that they exchange etc. I'm for me to I'm struggling with the with the notion that that an officer in this setting could not reasonably have formed the belief that he was a threat. Well I think that that kind of determination depends on the determination of what actually occurred and that that is a problem. So what that's I guess what we're pushing. What is the things that the jury could determine occurred as a factual matter that if they determined it it would be clear he could not reasonably have thought he was a threat. So a couple of things we've already mentioned. One is the unarmed. The other is that he did not actually make any verbal threats. The other is the nature of how he was walking toward him. That that is an objective fact that could be found by the jury and the jury could also find the circumstances in which this interaction occurred. If you have what what what's the evidence that he wasn't walking toward you. So the evidence is that he walked toward him but it's it's about the nature of that walk. Again I for example I I quibble with the word advancing because that that term is more loaded than it needs to be. If he was effectively stationary as one witness testified then there isn't really any kind of advancement. We're talking about an interaction where you have two individuals who are 14 feet apart at which point one person chooses to use force. There was a witness who says he was effectively stationary. Yes I want to make sure I get that quote correct. I believe it was McKean who testified that Justiniano was effectively stationary. But at what point in time? Yes again the timing is is muddles because. Was he stationary when the before the police officer arrived or after? Yeah so this would be after but certainly we have a photograph that was in the record that shows that he was stationary before the officer arrived as well. So again I think advancing is too strong of a word and if we're talking about what kind of facts that a jury could find then we certainly have enough that we need to find those facts first before the qualified immunity determination can be made. But I think the qualified immunity given that there is a possibility that a jury could find if I may conclude. Finish that sentence. Thank you that the jury could conclude that these circumstances arose in the light most favorable to the plaintiffs then there should not be qualified immunity here. Thank you. May I please the court? My name is David J. Officer. I represent Stephen Walker. May I proceed? Yes. First at the outset your honors I'd like to acknowledge that Mr. Justiniano's death on June 14, 2013 was undoubtedly a tragedy. But as Judge Gravel said below tragedy does not equate to unreasonableness and I would add to that that nor does it equate to liability. There are a few things I'd like to discuss with respect to facts if I may. First Karen Kirikides was the person who saw Mr. Justiniano in distress and stopped. She says she talked to him. When she spoke with him she couldn't understand what he was saying. But she told him to stay in his car and he followed the command. She went to her car and called 911. While she was doing that she saw Mr. Justiniano get out of his car and start pacing back and forth everywhere. He went to the trunk of his car. He went in and out of his car. The point being that circumstances changed between the time she spoke to him and couldn't understand him. And ten minutes later when Tupper Walker confronts Mr. Justiniano and what he says to him is hey what's going on? What's the matter here? Which is Mr. Justiniano says to me or I'm going to kill you. If he was so-called talking in tongues before the officer arrived, is that sufficient to cast doubt on the officer's allegation as to what was said to him? No it isn't your honor. That is an inference. That's an unreasonable inference and it's based on speculation. It's based on speculation that he was understandable as opposed to not understandable to Mrs. Karikaitis. Secondly, in her direct testimony she never said he was speaking in tongues. Just to be clear, she said she looked and as she was making the phone call she's looking in her rear view mirror and he's pacing about throwing his head up and he looked like he was speaking in tongues. She also tells us that her car windows were closed and she didn't hear any part of the interaction. So we think that you've got to have a lot more than that before you can infer that Tupper Walker is lying. You're saying the records suggest that when she directly interacted with him that there was no evidence about how he was speaking to her or if he was speaking to her? There's evidence that he spoke to her and that she didn't understand him. But I'm saying when they directly interacted as opposed to when he was walking around with her with the window up. I don't understand the question. I'm sorry. I'm just trying to figure out your last answer suggested that the talking in tongues comment was made when she was sitting in her car and he was pacing outside so she couldn't really hear him. That's correct. So I'm trying to figure out did she when she directly interacted with him is there anything in the record that suggests that he was speaking at that time? She couldn't understand him and across examination there may be questions and you said it sounded like he was speaking in tongues and she said yes. So she got two different pieces of testimony. Okay. Your Honor, I think that's important. But that's not a reasonable inference that his manner of speak hadn't changed? No, Your Honor, it isn't because we have direct testimony that is understandable. Can't you make a credibility judgment about the strength of that testimony as a juror? One reason to think that maybe it wasn't true is that someone else who had just spoken to him says he was unintelligible. Just spoken to him, Your Honor, ten minutes had passed. It's not as if I'm speaking to you and then I turn to someone else and someone else speaks to you. No, ten minutes had passed but he was still in medical crisis from his demeanor and behavior. Well, from his behavior he was still in crisis but, Your Honor, there's no evidence that supports, I don't think, an inference other than Mrs. Kiarikides couldn't understand him. There's nothing else that supports an inference that's ununderstandable. If there was a disputed fact as to whether Officer Walker's statement that he had the pen, if that's a disputed fact, in other words there's other evidence showing people saying that he probably didn't have a pen, does that bear on whether we might believe the officer's statement about what was said to him as well? I don't think so, Your Honor, because, as was pointed out by the panel, the evidence on or the testimony on the pen is exceedingly thin. That's an if. If there was a disputed fact as to whether a jury could conclude he's wrong about that, there was no pen, and we've got another person who's interacting with this person saying I couldn't understand what he was saying because he was in crisis, doesn't that together start to suggest, well, do we have to believe Walker as a juror when he says here's what he said to me? I think, Your Honor, that you could be to the conclusion that a juror's free not to believe that, but I go back to my first point and I think it's an unsupported and speculative inference that he couldn't be understood by Trooper Walker. If we put aside the statement that Justine O'Neill supposedly said to Walker and we put aside the pen issue when we were talking to your opponent's counsel, take those two things as given. Say there's disputed facts on both points. Can you still win on the ground that he was moving or the way he was moving alone would be enough to pose a threat? Yes, Your Honor, we can, and this is why. Because Trooper Walker, recall the circumstances, he has retreated twice, and Ms. Windbush, who's a witness, testified that she saw both pepper sprays and before the pepper spraying, she saw him retreat and hold his hand up and tell him to stop. When you say him, you mean the officer? Yes, I mean the officer, Your Honor. Okay. Trooper Walker tells him to stop, and he's still retreating, Your Honor. He's doing everything he can avoid to avoid this confrontation. Mr. Justineano is still coming at him. It was reasonable for him to use pepper spray. The evidence that he's coming at him is what? The evidence that he's coming at him is that Trooper Walker testified that the starter is slow, that it increases in speed as things go along. Ms. Windbush says that even prior to the pepper spraying, he picked up speed and was heading towards the officer. And what about the reference that your opponent's counsel made to a witness saying he was effectively stationary? I don't recall that, and I don't see it in the record from Ms. McKean. If it's there? If it's there, I don't think... If it's there and if it relates to the appropriate time period. Right. If it's the appropriate time, then she would have to figure out what part of the interaction she saw. Well, Your Honor, the evidence that he was stationary proposed by my brother is a photograph taken while the bus is zooming by. I mean, that tells you that he was standing still for that second or however long it takes for a photograph to be snapped. But certainly that's not convincing evidence that, especially since every eyewitness says he advanced, except Nathan McKean. Windbush says that... McKean says what? McKean says she was there, that she saw the interaction, that she thought just standing there was stationary, that she saw him drop his shoulder and move towards the officer. That's her recollection. Then she said she's indicted. So if we take McKean as the fact, McKean's account as the fact that is the fact that we'd have to decide, the jury would at least have to have found that much, can you still win based on McKean's account of what happened? Yes, you can, because she sees him making a threatening gesture, dropping his shoulder, and again approaching Walker. The witnesses testified about it. I think she says something about she saw him drop his shoulder and then move forward. That's correct. And there's no doubt that Walker's telling this guy to stop. Now, we think that there's no Fourth Amendment violation if you use pepper spray to stop that advance. For that, I would cite Kenya v. Floyd, which the circumstances are a bit different, but if you recall, the officer, I think his name was McKean, makes a stop in New Hampshire, approaches the passenger, passenger takes off, McKean comes around, stops him, gets out of his car before there's any words or any interaction with the driver, he pepper sprays him. He pepper sprayed him to get him under control, and he pepper sprayed him to stop flight. In this case, Your Honor, and that case happened, I think, in 2011, but I'm not sure. But the point is that the law as it stood then justifies the use of pepper spray to control a subject. Thank you. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Joe Lucia for Defendant at Poli, Colonel Timothy Albin. This Court can and should affirm the dismissal of plaintiff's 1983 supervisory liability claim against Colonel Albin on any one or more of the three bases that were relied upon by the District Court, which were a lack of allegations of sufficient notice, a lack of sufficient allegations of causation, and qualified immunity. As to the notice prong of the claim, the complaint simply does not allege any prior constitutional rights violations by any of Colonel Albin's subordinates or any prior constitutional rights violation even ever occurring in Massachusetts. The complaint makes no allegation that Colonel Albin knew of or purposely disregarded any specific prior instance that one of his subordinates had committed such a violation. It also makes no allegation of a history of widespread abuse along these lines. I'm sorry. Are you saying that it has to be something generic to Massachusetts for him to have any responsibility if it is a widespread national problem known to him? Yes, Your Honor. Why? Because the Guadalupe Valles v. Pasquera case from this Court in 2016 makes clear, I think, that in order to hold a supervisor liable under a 1983 supervisory liability claim, there must be an allegation of some either abuse or constitutional law violation or a pattern and practice of excessive force, which was in that case, in the jurisdiction where the supervisor has the authority to control it. But that is not responsive to Judge Thompson's question. In Guadalupe Valles, there was not a national problem. There was not a widespread problem. The allegation there was that there was a problem particular to the police department in firearms and were abusing civilians. And the Department of Justice report was that disgust conditions in San Juan was used to show notice in that case. Judge Thompson's question is different. That there are certain phenomena which we know and think of as being national problems. And if we're dealing with one of those problems, why should there have to be vocalized evidence? Thank you, Your Honor. Judge Selya, you said it much better than me. It's just that we Rhode Islanders team up. I take your point, Judge Selya. I still think that Guadalupe Valles addresses the point because in that case, the Department of Justice report was deemed to have no visible connection with the structure, training, oversight, or operations of the San Lorenzo Municipal Police Department. And it also was held not to place the Special Investigation Bureau leaders anywhere in the relevant chain of command. I think that establishes that in order to attach liability on a supervisor, they need to be in a position to do something about a known risk that one of their subordinates would commit a violation. I think for further support on this point, Your Honor, we could look to Barker v. City of Boston, which was a district court case where a motion to dismiss was allowed by the court. It was a municipal liability case. It was not supervisory liability, so I should point that out of candor. But in that case, equally, the court stated that the plaintiff must show that the City of Boston ignored a known or obvious risk of a highly predictable severe harm. Specifically, the plaintiff must show that Boston was deliberately indifferent to a known risk that its officers would commit a constitutional rights violation. But this was dismissed on the pleading as to your client, so there had been no discovery. Is that correct? That is correct. Okay, so how would he have been able to probe what was going on in Massachusetts? Well, I think that is what the pleading standard requires of him to do, and even notwithstanding the fact that he did not have access to discovery for such statistics, I think if those statistics existed, if they were known, they should have been included in the complaint, and that would have supported the notice requirement for the supervisor. The supervisor, in other words, based upon the status of our law today, it is not a sufficiently pled allegation in a complaint to that you should have been on notice of a potentially serious risk of constitutional law violations committed by your people, basically because there were trends, national trends, about an increase in fatal interactions between police officers and mentally ill individuals.  Thank you, Your Honors. Thank you. A few points briefly. First, as to the statement, it was actually basically stationary, not effectively stationary. That is on page 110 of the second volume of the appendix. And is that McKean? That is McKean. And does McKean talk about dropping the soldier and moving? Yes. She also says when she first sees them, both were standing, they were both basically stationary, and the man kept moving unsteadily on his feet, describing that as swaying. And what about the shoulder, dropping the shoulder point? Is that in McKean's testimony? That is also in McKean's testimony. And she says, is it she or he, McKean? She. She says what about that? She says that bending of the knee and dipping of the shoulder appear related, yes. So that's a couple of pages. So there's nothing in her statement about the bending of the knee or the dipping of the shoulder that suggests it's a forward motion? Is that your point? My point is that the testimony, again, all of the testimonies... Just on that question. Sure. I think on this point in particular, our position is that she sees them as basically stationary, and that's something that the jury could adopt. And there's nothing in her testimony about the shoulder motion that suggests it's a forward motion towards Walker. Is that right? I think perhaps at a different point. But again, this is... What point does she say that? In relation to a different point in time. But that's in relation to a subsequent point. Yeah, I agree. And the subsequent point in time is still before the fatal intervention. So isn't the subsequent point in time the more relevant? I think that the relevant point in time is something that needs to be determined. Because yes, it is a subsequent point in time. But at some subsequent point in time, the officer uses the pepper spray. Yeah, but prior to that, there's testimony from McKean that the deceased had made a forward motion with the shoulder. I think that the testimony, again, if I may finish this. The problem is that the timing is unclear as to whether the shoulder drop first or the pepper spray was used first. Because every witness testifies differently as to when these things occur. And I just have one more question. What is in the record or what is in the pleadings that would suggest that better training from a national perspective has reduced this type of conduct? This goes to the causation problem. I think that the pleading makes clear that there is a consequence for escalation techniques, particularly with regards to people who are mentally ill. And that is clearly pled. That doesn't answer the question. Well, I'm asking about what is it in this case record to suggest that those police forces that have implemented training programs as to how to deal with the mentally ill have had better outcomes. So again, I'm answering in a roundabout manner. Okay, I'll shut up. Go ahead. Okay. So to get the point, there isn't anything specifically stated in the complaint. But there are references to reports about these kinds of studies that have been done. There was a motion to add these reports to the record at the motion to dismiss stage. The motion was denied. Okay. Thank you.